UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

ARTHUR GATES,

    Petitioner,

    v.                                CAUSE NO.: 1:16-CV-373-WCL-SLC

SUPERINTENDENT,

    Respondent.

## OPINION AND ORDER

Arthur Gates filed a habeas corpus petition to challenge his conviction for rape, criminal confinement, and residential entry under cause number 82D02-705-FA-468.[1] Following a jury trial, on May 21, 2008, the Vanderburgh Superior Court sentenced Gates to forty-eight years of incarceration.

## FACTUAL BACKGROUND

In deciding this habeas petition, the court must presume the facts set forth by the state courts are correct unless they are rebutted with clear and convincing evidence. 28 U.S.C. § 2254(e)(1). Here, Gates does not dispute the Court of Appeals of Indiana's summary of the evidence presented at trial:

> On the night of May 22, 2007, Gates knocked on the door of B.D.'s residence at 517 Covert Avenue in Evansville and forced his way inside. B.D. has a mental disability and lives alone with her dog. B.D. recognized Gates, who was her neighbor's acquaintance. Gates engaged B.D. in a lengthy conversation about various topics. At some point Gates pulled out a gun, pointed it at B.D., and threatened to shoot both B.D. and her dog if she would not have sex with him. As

---

[1] Gates did not submit a traverse, which was due on August 16, 2017. *See* N.D. Ind. L. Cr. R. 47-2.

> B.D. repeatedly refused, Gates choked B.D. and hit her in her face multiple times with his fists, breaking her glasses and cutting her forehead. Gates locked the front door and pushed B.D. into her bedroom. In her efforts to escape from Gates, B.D. bumped her head against a wall and against the dresser in her bedroom, cutting her head. Gates told B.D. to remove her clothes, then forcibly removed her nightgown and panties. Gates placed his penis into B.D.'s vagina and licked her breast. According to B.D., Gates subsequently ejaculated onto her breast and passed out on her bed.
>
> B.D. then dressed herself in shorts and a gown, fled the house with her dog, and flagged down Evansville Police Officer Donald Thompson, who was nearby. When Officer Thompson and other authorities, including Sergeant Brent Hoover, arrived at B.D.'s home, they found Gates on the bed in the bedroom, clothed only in pants pulled down around his ankles. Gates, who smelled of alcohol, appeared to have passed out. A weapon appearing to be a handgun was on the floor next to the bed. After another officer kicked the mattress, Gates sat up, clenched his fists and cursed. Sergeant Hoover used a taser to subdue Gates.
>
> Subsequent medical examinations revealed a tear to B.D.'s hymen, a four-centimeter laceration to her head requiring staples, and multiple facial bruises and scratches. DNA tests performed on a substance found on B.D.'s left breast revealed results consistent with Gates's DNA profile.

*Gates v. State*, 41 N.E.3d 719 (Ind. Ct. App. 2015); ECF 13-7 at 2-3.

Gates argues that he is entitled to habeas corpus relief, alleging that he was denied effective assistance of counsel when trial counsel failed to obtain an expert witness to challenge the prosecution's forensic evidence. Gates has presented this claim to the Indiana Supreme Court and the Court of Appeals of Indiana. ECF 13-8 at 30-35; ECF 13-12. Therefore, Gates has properly exhausted his State court remedies, and this court will consider the merits of his claim. *See* 28 U.S.C. § 2254(b)(1)(A); *Lewis v. Sternes*, 390 F.3d 1019, 1025 (7th Cir. 2004).

## LEGAL STANDARDS

*A.*     *Habeas Corpus*

"Federal habeas review . . . exists as a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Woods v. Donald*, 135 S.Ct. 1372, 1376 (2015) (quotations and citation omitted).

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

> [This] standard is intentionally difficult to meet. We have explained that clearly established Federal law for purposes of §2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions. And an unreasonable application of those holdings must be objectively unreasonable, not merely wrong; even clear error will not suffice. To satisfy this high bar, a habeas petitioner is required to show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.

*Woods,* 135 S. Ct. at 1376 (quotation marks and citations omitted). Criminal defendants are entitled to a fair trial but not a perfect one. *Rose v. Clark*, 478 U.S. 570, 579 (1986). To warrant relief, a state court's decision must be more than incorrect or erroneous; it must be objectively unreasonable. *Wiggins v. Smith*, 539 U.S. 510, 520 (2003). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as

3

fairminded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quotation marks omitted).

### B. *Ineffective Assistance of Counsel*

To prevail on an ineffective assistance of counsel claim in the State courts, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced him. *Strickland v. Washington*, 466 U.S. 668 (1984). There is "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." *Id.* at 689. The test for prejudice is whether there was a reasonable probability that "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. In assessing prejudice under *Strickland* "[t]he likelihood of a different result must be substantial, not just conceivable." *Harrington v. Richter*, 562 U.S. 86, 112 (2011). However, "[o]n habeas review, [the] inquiry is now whether the state court unreasonably applied *Strickland*." *McNary v. Lemke*, 708 F.3d 905, 914 (7th Cir. 2013). "Given this high standard, even 'egregious' failures of counsel do not always warrant relief." *Id.*

## ANALYSIS

Gates claims that the State court made an objectively unreasonable determination that trial counsel's failure to retain an expert witness did not constitute ineffective assistance of counsel. At the post-conviction relief stage, Gates argued that trial counsel failed to retain an expert witness to challenge the testimony of Sarah Walker, the

4

prosecution's expert witness who introduced forensic evidence against Gates at trial. ECF 13-8 at 30-35. He further argued that doing so would have allowed him to prevail at trial in light of the jury's acquittal on the count of criminal deviate conduct.[2] *Id.*

At trial, the victim who testified that Gates forced his way into her home and then forced her to submit to both vaginal and anal sex with physical violence and by brandishing what appeared to be a gun. Trial Tr. 92-106. Additionally, two police officers testified that, when they responded to the victim's request for assistance, they found Gates on the victim's bed asleep with his pants around his ankles. *Id.* at 235-36, 468. Medical testimony also indicated a tear in the victim's hymen, a four-centimeter laceration to her head requiring staples, and multiple facial bruises and scratches. *Id.* at 327-34.

Sarah Walker, the prosecution's forensic expert witness, also testified at trial. She explained that she tested samples for: acid phosphatase (AP), a presumptive test for seminal fluid; p30, a specific protein in seminal fluid; and sperm by observing the samples through a microscope. *Id.* at 429. She further testified that a positive test for AP and a negative test for p30 was "confirmatory for negative." *Id.* at 432. She testified that: the external genital swab (Exhibit 1B) was AP positive, a weak P30 positive, and sperm negative; the oral swab (Exhibit 1D) was AP positive, P30 negative, and sperm negative; and that the oral smear (Exhibit 1R) was sperm positive but revealed the presence of

---

[2] Though "deviate sexual conduct" is defined under Indiana law as "an act involving a sex organ of one person and the mouth or anus of another person," the prosecution only asked the jury to find that Gates engaged in anal sex for Count 2. Trial Tr. 646-47.

only one sperm head. *Id.* at 429-33. She also testified that she tested a dried secretion and bite mark from the victim's breast (Exhibit 1G) for DNA, which revealed Gates' DNA. *Id.* at 436-39.

At closing arguments, trial counsel generally challenged the credibility of the victim and criticized the prosecution's forensic evidence. *Id.* at 651-60. He also conceded that some sexual conduct occurred and invited the jury to find that it was consensual.[3] *Id.* The jury acquitted Gates on Count 2, the charge of criminal deviate conduct, but convicted Gates on Count 1, the charge of rape. Direct Appeal App. 188-89

At the post-conviction relief stage, Karl A. Reich, a forensic expert, provided testimony at an evidentiary hearing. He testified that Walker's tests for the presence of semen were unreliable because P30 was not specific to semen or males and because Walker could not have reasonably identified a single sperm head. Post-Conviction Relief Tr. 13-14, 34-37 (March 5, 2014). He further testified that the external genital swab and the oral swab were negative for semen.[4] Post-Conviction Relief Tr. 24 (Jan. 23, 2015). Additionally, trial counsel submitted an affidavit to attest that he did not hire an expert witness to challenge the forensic evidence because he believed that doing so would have assisted the prosecution more than it would have benefitted Gates. Post-Conviction Relief Ex. 3.

---

[3] Trial counsel also alluded to this argument in his opening statement. Trial Tr. 83-87.

[4] Dr. Reich testified that the breast swab was also negative for semen; however, Walker testified that she only tested the breast swab for DNA. Trial Tr. 436-39.

6

The Court of Appeals of Indiana found that trial counsel did not perform deficiently, noting that, when trial counsel did not hire an expert witness, it was a strategic decision. ECF 13-11 at 9-10. The appellate court also stated that that the decision was not unreasonable as the prosecution introduced no forensic evidence that genetic material from Gates was present on the victim's genitals, anus, or mouth.[5] *Id.* The appellate court further noted that, during closing arguments, trial counsel addressed the forensic evidence. *Id.* It further concluded that, considering the strength of the prosecution's other evidence, Reich's expert testimony would not have resulted in a different outcome at trial. *Id.* at 8.

After reviewing the record, the court cannot find that the appellate court's determination regarding trial counsel's failure to retain an expert witness was objectively unreasonable. Significantly, trial counsel's strategy was to invite the jury to find that the sexual conduct was consensual and to concede the fact that Gates and the victim engaged in sexual conduct. This strategy was reasonable in light of the medical evidence regarding her injuries and the police officers' testimony that they found Gates in the victim's bed. Considering this strategy, trial counsel's decision to not retain an expert witness was also reasonable -- a stronger challenge to the forensic evidence would have been inconsistent with the defense strategy and would have likely damaged the credibility of the defense. Thus the court cannot find that the appellate court's determination regarding trial counsel's performance was unreasonable.

---

[5] The appellate court also noted that Dr. Reich did not undermine Walker's finding regarding the presence of Gates' DNA on the victim's breast. ECF 13-11 at 9-10.

The court has also considered the other evidence presented by the prosecution, including testimony from the victim and police officers as well as the medical evidence regarding the victim's injuries. Moreover, the defense strategy strongly suggests that the forensic evidence -- which was of minimal relevance to whether the victim consented -- had little impact with respect to the jury verdict on Count 1 and that the jury verdict would have not have changed even if the forensic evidence was subjected to further scrutiny with a battle of the experts or was excluded from trial entirely. In sum, the court cannot find that the appellate court's determination that there was no reasonable possibility that retaining an expert witness would have changed the outcome of the trial was unreasonable.

As a final matter, Gates argues that retaining an expert witness would have allowed him to prevail at trial in light of the jury's acquittal on the count of criminal deviate conduct. He argues that the only difference between the prosecution's case for rape and the prosecution's case for criminal deviate conduct was the forensic evidence. However, the prosecution's case for rape differed in at least two other respects. First, the medical examination findings indicated that the victim was involved in vaginal sex, but there was no such findings with respect to anal sex. Trial Tr. 327-37. Second, trial counsel was able to impeach the victim's testimony regarding anal sex by obtaining her admission that she had previously stated that Gates had only "tried" to initiate anal sex. *Id.* at 160. Accordingly, Gates' claim that trial counsel failed to retain an expert witness to challenge the prosecution's forensic evidence is not a basis for habeas relief.

Pursuant to Section 2254 Habeas Corpus Rule 11, the court must grant or deny a certificate of appealability. To obtain a certificate of appealability under 28 U.S.C. § 2253(c), the petitioner must make a substantial showing of the denial of a constitutional right by establishing "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). For the reasons explained in this opinion for denying habeas corpus relief, there is no basis for encouraging Gates to proceed further. For the same reasons, he may not appeal *in forma pauperis* because an appeal could not be taken in good faith.

For these reasons, the court DENIES the habeas corpus petition; DENIES a certificate of appealability pursuant to Section 2254 Habeas Corpus Rule 11; DENIES leave to appeal *in forma pauperis* pursuant to 28 U.S.C. § 1915(a)(3); and DIRECTS the clerk to enter judgment in favor of the Respondent and against the Petitioner.

SO ORDERED on February 1, 2018.

s/William C. Lee<br>
JUDGE<br>
UNITED STATES DISTRICT COURT